Filed 2/1/24  In re A.C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | D082852 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. EJ4768) |
| Plaintiff and Respondent, | |
| v. | |
| J.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Mark T. Cumba, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

J.M. (Mother) appeals the juvenile court's order terminating her parental rights to her minor child A.C. under Welfare and Institutions Code[1] section 366.26.  The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) failed to conduct an adequate initial inquiry under section 224.2, subdivision (b) into A.C.'s possible status as an "Indian child," as defined by the Indian Child Welfare Act.  (ICWA; 25 U.S.C. § 1901 et seq.)  J.M. argues the Agency failed to conduct ICWA inquiries with four individuals identified in the record.  We conclude the juvenile court did not abuse its discretion under *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1008 (*Ezequiel G.*).  Because the Agency's inquiry yielded reliable information that showed there was no reason to believe A.C. may have been an Indian child, the juvenile court did not abuse its discretion in finding that the Agency's ICWA inquiry was sufficient.  Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2022, the Agency petitioned the juvenile court under section 300, subdivision (b)(1) on behalf of A.C., alleging that A.C. was at substantial risk of serious physical harm due to Mother's mental disorder and intellectual disability.  Mother lived in a board and care facility and required assistance with daily living activities due to her mental illness and significant cognitive delays.  Mother provided the names of two possible fathers for A.C.  Both denied being A.C.'s father and neither wanted to take a paternity test or be involved in the case.[2]

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    The alleged fathers did not appeal and did not join in Mother's appeal. They will be mentioned only where necessary to explain the proceedings.

Attached to the Agency's petition was an ICWA-010(A) form that showed ICWA inquiry conducted with Mother and one of the alleged fathers gave no reason to believe that A.C. was or may have been an Indian child.

Mother denied she had any Native American heritage. She reported that both maternal grandmother and maternal grandfather immigrated to the United States from Argentina. Mother informed a social worker that her only relative was the maternal grandfather who resided in an assisted living facility and was unable to care for himself or A.C. She had no siblings and did not see the maternal grandfather often.

The maternal grandfather denied he had Native American heritage. He reported that he immigrated to the United States from Argentina in his twenties. He also reported that he was Mother's only relative, and he also denied that there were any family friends or nonrelative extended family members who could care for A.C. He also denied he had any contact information for any family members. Other individuals confirmed that the maternal grandfather was Mother's only relative.

Mother subsequently reported that A.C. had a great-aunt who lived in Argentina. The great-aunt lived "in a facility" and was in her eighties and Mother had not talked to her "in a long time." On a different occasion, Mother reported that the great-aunt was deceased. She also implied that her other family members had passed away, including the maternal grandmother who had passed away a couple years earlier.

Mother's godmother had not seen Mother in a couple years and was not involved in her life. Apart from the maternal grandfather and the godmother, the Agency was unable to locate any other relatives or nonrelative extended family members of Mother or A.C.

3

At the May 2022 detention hearing, Mother's counsel stated she would be submitting an ICWA-020 form indicating no Native American heritage. Although the form was not filed with the court until June 2023, it was dated May 2022, signed by Mother, and gave the court no reason to believe or know that A.C. was or may be an Indian child. At the hearing, the court deferred a ruling on whether ICWA applied.

In June 2022, the Agency conducted efforts to find A.C.'s family by sending letters to potential relatives and/or nonrelative extended family members. The letters informed them of A.C.'s placement in protective custody and provided them with information about the relative placement preference. It also informed them that they would receive information about the placement application process if they responded with an interest in placement. The maternal grandfather is the only relative who responded to the Agency's letter. He declined placement.

At the June 2022 jurisdiction and disposition hearing, the juvenile court found A.C.'s petition true, removed A.C. from Mother's custody, and placed her in a licensed foster home. Further, the court found the Agency used due diligence in identifying, locating, and notifying A.C.'s relatives under section 309, subdivision (e). The court found that ICWA did not apply.

At the six-month review hearing in January 2023, counsel for the Agency reported there was no new information that would lead the juvenile court to believe A.C. was or may have been an Indian child. The court confirmed its prior finding that ICWA did not apply and set the matter for trial.

In its June 2023 report, the Agency reported that no relatives or nonrelative extended family members visited A.C. or requested placement of

4

A.C.  The Agency recommended that the court terminate parental rights and designate adoption as A.C.'s permanent plan.

At the September 2023 section 366.26 hearing, the Agency reported it had no new ICWA-related information.  The court confirmed its finding that ICWA did not apply, terminated parental rights, and designated adoption as the permanent plan.

## DISCUSSION

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child."  (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)  First, the Agency's duty of initial inquiry "includ[es], but [is] not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (§ 224.2, subd. (a).)  "Second, if that initial inquiry creates a 'reason to believe' the child is an Indian child, then the Agency 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id.*, subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*In re D.S.*, at p. 1052.)

Here, Mother challenges only the sufficiency of the Agency's initial inquiry.  She contends that it fell short because the Agency failed to question four individuals about A.C.'s possible Native American ancestry, which she

5

claims was required by section 224, subdivision (b). We conclude there was no abuse of discretion under *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1008. In *Ezequiel G.*, the Court of Appeal adopted an abuse of discretion standard for reviewing the adequacy of the Agency's ICWA inquiry. In so doing, the court explained that, "[d]eciding whether an inquiry was 'adequate' and an agency acted with appropriate diligence requires more of a court than simply applying a statutory checklist to undisputed facts. Instead, it requires the court to 'engage in a delicate balancing' [citation], to assess whether an ICWA inquiry was appropriate and sufficient in light of the facts of a particular case. In short, the statute directs the juvenile court to perform a quintessentially discretionary function, and thus . . . our review should be for abuse of discretion." (*Id.* at pp. 1004–1005.)

Notably, section 224.2, subdivision (b) does not "specify how many extended family members the [A]gency must interview." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1007.) And "given the statute's expansive language and the vagaries of the extended family information parents are willing or able to provide, determining compliance with ICWA requires a significant exercise of discretion." (*Id.* at p. 1006.) Accordingly, "the focus of the court's analysis should not be on the number of individuals interviewed, but on whether the [A]gency's ICWA inquiry *has yielded reliable information about a child's possible tribe affiliation*." (*Id.* at p. 1009, italics added.)

The Agency's ICWA inquiry here did so. The Agency conducted ICWA inquiry with Mother, the maternal grandfather, and other available individuals, which showed there was no reason to believe A.C. may have been an Indian child. Mother repeatedly denied she had Native American or Indian ancestry to the Agency, the court and in an ICWA-020 form. She reported that both her parents emigrated from Argentina. The Agency also

6

interviewed Mother's only available relative, the maternal grandfather, who denied Native American or Indian ancestry, reported he was Mother's only relative, and denied having contact information for any family. He also reported that he immigrated to the United States from Argentina in his twenties. Several other individuals confirmed that the maternal grandfather was Mother's only available relative. The Agency's inquiry yielded reliable information about A.C.'s possible Native American ancestry.

There was simply no reason for the Agency to seek additional information about A.C.'s possible tribal affiliation on her maternal side.[3] Mother argued that the Agency failed to inquire of four individuals identified in the record, however those individuals were unlikely to know more than Mother and the maternal grandfather about A.C.'s ancestry. Additionally, the two maternal great-aunts do not qualify as extended family members. (See 25 U.S.C. § 1903(2).) Mother also reported she did not have their phone numbers. With the information Mother provided the Agency for the great-aunts (first names and locations in Atlanta, Georgia, and Argentina), it is unlikely the Agency would have been able to locate them. The Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053.)

---

[3] The alleged fathers did not qualify as parents under the ICWA. (25 U.S.C. § 1903(9) [the ICWA definition of parent "does not include the unwed father where paternity has not been acknowledged or established"].) Even if they had made any claim of Native American ancestry, it would not trigger ICWA because, absent a biological connection, a child cannot claim heritage through an alleged father. (See *In re E.G.* (2009) 170 Cal.App.4th 1530, 1532.) Regardless, one alleged father and his sister denied any Native American heritage. The other alleged father was developmentally delayed and did not understand the question, although his counsel denied there was any reason to believe he had Native American heritage.

Similarly unhelpful is Mother's cryptic statement during an Agency interview about "her cousin Parks married to Lisa Meadlawk and Paul." Although Mother argues on appeal that Parks is A.C.'s "second cousin" and therefore an extended family member under ICWA, there is nothing in the record that expands on Parks's relationship with A.C. or Parks's location. Mother also did not have Parks's contact information.

The fourth individual Mother alleges the Agency should have interviewed is Gayle M., to whom the Agency sent a letter as a "potential" relative. There is no evidence, however, that Gayle M. responded to the letter or that she was as an extended family member. Contrary to Mother's assertion, the record does not indicate that there was other "readily obtainable information that was likely to bear meaningfully upon whether [A.C.] is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

We thus reject Mother's argument that the Agency should have conducted further ICWA inquiry. There was simply no reason for the Agency to seek additional information from the four individuals about A.C.'s possible Native American ancestry given the information received directly from Mother, the maternal grandfather, and other available individuals.[4]

Finally, as *Ezequiel G.* explains, tribal membership " 'is voluntary and typically requires *an affirmative act* by the enrollee or her parent.' " (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009.) To be an Indian child within

---

[4] Although not specifically challenged by Mother, we further conclude there is no evidence before us indicating a "reason to know" A.C. is an Indian child under ICWA. Mother does not contend there is evidence that A.C. met any of the six statutory criteria required to qualify as an Indian child under section 224.2, subdivision (d). (See *Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1004 [where none of these six factors exists, "the court must make a finding that there is no reason to know the child is an Indian child"].)

the meaning of ICWA, a child must be either: (1) a member of a federally recognized tribe; or (2) eligible for membership and the biological child of a member. (25 U.S.C. § 1903(4).) "Because tribal membership typically requires an affirmative act by the enrollee or her parent, a child's parents will, in many cases, be a reliable source for determining whether the child or parent may be a tribal member. We therefore believe a juvenile court may find an ICWA inquiry was adequate even if an agency has not interviewed some available family members." (*Ezequiel G.*, at p. 1010.) Here, where Mother was available and denied tribal membership, and where the alleged fathers do not qualify as parents under the ICWA, (25 U.S.C. § 1903(9), further inquiry by the Agency of the four individuals would have almost certainly been pointless. As *Ezequiel G.* concluded, "we believe it will be rare that a parent is unaware of her own or her child's tribal membership." (*Ezequiel G.*, at p. 1011.)

In short, because the Agency's inquiry yielded reliable information that A.C. did not have Indian ancestry, we conclude the juvenile court did not abuse its discretion by finding that the Agency conducted a sufficient ICWA inquiry. Therefore, we affirm.

## DISPOSITION

The September 25, 2023 order is affirmed.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.